IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LEE BAKER                                                                                          PLAINTIFF

V.                                              CIVIL NO. 4:14-cv-04104

JANA TALLANT, et al                                                                            DEFENDANTS

## **MEMORANDUM OPINION**

This is a civil rights action filed by Plaintiff, Lee Baker, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Plaintiff is currently incarcerated in the Arkansas Department of Correction, Cummins Unit, in Grady, Arkansas.  The events at issue occurred while Plaintiff was incarcerated in the Howard County Detention Center ("HCDC").

Plaintiff was arrested on November 14, 2013, for sexual indecency with a minor and placed in the HCDC.  During his incarceration Plaintiff claims he was verbally harassed and sexually assaulted by other inmates because of his sexual orientation and the charges against him.[1]  Plaintiff alleges that he informed Defendants about the incidents and requested to be moved to a different location and Defendants did not respond to his requests.

Plaintiff is asserting claims for failure to protect against Defendants Jana Tallant, Dawanda Schwope, Sean Scott, Hector Cortez, Brian Cook, and Shelbi Miller-Smith,[2] in both their official and individual capacities.  Plaintiff requests Defendants pay for his pain, suffering, and mental

---

[1] The Honorable Barry A. Bryant, Chief Magistrate Judge, United States District Court for the Western District of Arkansas, entered a Report and Recommendation (ECF No. 31) finding Plaintiff's claims regarding verbal sexual harassment, while offensive, did not rise to the level of a constitutional violation in the context of a prison setting. The Court adopted the Report and Recommendation leaving only Plaintiff's claims of physical sexual assault for trial.

[2] A "Jailer Misty" was named as a defendant in Plaintiff's complaint.  However, she was never served.  Therefore, any allegations against Jailer Misty were not before the Court and were not considered.

1

anguish and that Defendants make HCDC a safe environment for everyone despite their sexual orientation or charges.

Defendants argue that their conduct does not rise to the level of a constitutional violation and, to the extent they have been sued in their individual capacities, they are entitled to qualified immunity. Defendants also assert that at no time has a policy, practice or custom of the HCDC resulted in the violation of Plaintiff's constitutional rights. Therefore, Plaintiff's claims against Defendants in their official capacity must fail.

Defendants admit there is a grievance procedure in place at the HCDC and that Plaintiff did file several grievances. However, Defendants assert that Plaintiff never filed any grievances concerning the allegations contained in the Complaint. Consequently, they claim Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1983.

This matter was tried to the Court on August 22, 2016. The testimony of the following witnesses was heard: (1) Louis Richards; (2) Brandon Null; (3) Tiffany Cowart; (4) Plaintiff Lee Baker; (5) Defendant Jana Tallant; (6) Defendant Hector Cortez; (7) Defendant Shelbi Miller-Smith; (8) Defendant Brian Cook; (9) Defendant Dawanda Schwope; and (10) Defendant Sean Scott.

Plaintiff offered Exhibits A – G, including: (A) Inmate Request Form dated June 24, 2014; (B) Inmate Request Form dated April 6, 2014; (C) Inmate Request Form dated June 19, 2014;[3] (D) Section 05 Grievance Procedure from the HCDC; (E) List of Property Returned dated May 21, 2014; (F) List of Property Returned dated November 15, 2013; and (G) Receipt for Evidence dated April 15, 2014. Plaintiff's Exhibits A – G were admitted without objection.

---

[3] Exhibits A–C were not filed in Plaintiff's jail file.

Defendants offered Exhibits 1 – 8, including: (1) Plaintiff's Booking Sheet and Classification Report; (2) Howard County Inmate Rules and Regulations; (3) Inmate Release Reports; (4) HCDC General Population Inmate rules and Regulations Amended August 14, 2013, acknowledged by Plaintiff on November 15, 2013 and March 19, 2014; (5) ADC Inmate Search – Inmate Details; (6) Jana Tallant's Jail Administrator's Notes dated July 24, 2015; (7) Inmate Grievance/Request forms from January 8, 2014, through June 18, 2014, and (8) Statements of Defendants Hector Cortez, Brian Cook, Shelbi Miller-Smith, Dawanda Schwope and Sean Scott each dated July 24, 2015. Defendants' Exhibits 1 – 8 were admitted without objection.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. The Court now renders its findings of fact and conclusion of law pursuant to Rule 52 (a) of the Federal Rules of Civil Procedure.

**FINDINGS OF FACT**

Plaintiff was arrested on November 14, 2013, for indecency with a minor and booked into the HCDC. He was placed in H pod with other inmates. The following day he was moved to general population – D pod. Plaintiff was concerned that he would be harassed because of the charge against him and his sexual orientation. From the time he was booked into the HCDC until he bonded out in February, 2014, he was verbally harassed by other inmates. Plaintiff did not file any grievances with the HCDC relating to the verbal harassment nor did he communicate verbally about the harassment to any defendant.

Plaintiff was arrested again on March 19, 2014, and incarcerated in the HCDC. On April 2, 2014, Plaintiff was sentenced to the Arkansas Department of Correction ("ADC") and moved to A Pod – the holding pod for inmates waiting to be transferred to the ADC. Although there are cameras in some of the pods in the HCDC, there are no security cameras in A Pod.

On April 3, 2014, Plaintiff woke up with another inmate on top of him "dry humping" up against him. On April 12, 2014, three inmates pulled Plaintiff's pants down and held him down while another inmate pretended to have sexual intercourse with him in front of other inmates. In addition, sometime during the month of April, Plaintiff was slapped on his buttocks by another inmate. Plaintiff did not sustain any physical injury from the assaults but he did suffer humiliation and mental anguish. There was no testimony from Plaintiff or other evidence identifying the inmates who committed the assaults. Plaintiff did not file any criminal charges against the inmates nor did he file any police reports relating to the incidents. Plaintiff remained in A Pod until June 27, 2014, when he was transported to the ADC.

Defendant Tallant is the Jail Administrator for the HCDC. She testified that there is a formal written grievance procedure at the HCDC. In addition to this procedure, inmates are free to approach her and/or other HCDC employees at any time with concerns relating to the inmate's safety. According to Defendant Tallant, when an inmate expresses concern for his safety the inmate will be moved to a different location.

Plaintiff testified that he submitted three separate grievances while in the HCDC relating to the physical assaults. One grievance was submitted to Defendant Schwope relating to Plaintiff being held down and assaulted, another was submitted to Defendant Cook relating to the incident where Plaintiff was slapped on the buttocks, and another was submitted to either Defendant Cortez or Defendant Miller-Smith relating to the inmate who "dry humped" up against him. However, there is no record of these grievances being sent by Plaintiff or being received by any defendant. There is also no evidence Plaintiff ever attempted to follow up on these grievances, either in writing or verbally.

In Plaintiff's jail file, there is written documentation that Plaintiff submitted one grievance and four inmate request forms during his incarceration at HCDC. On January 8, 2014, Plaintiff submitted a grievance concerning his anxiety and sleep medication. On February 6, 2014, Defendant Tallant spoke with Plaintiff about his medication and responded to the grievance in writing asking if he had any medication at home that could be brought to him. On February 5, 2014, Plaintiff submitted an inmate request form seeking assistance in finding his car and the cost of retrieving it. On February 6, 2014, Defendant Tallant responded to Plaintiff in person providing him with the requested information. On April 23, 2014, Plaintiff submitted an inmate request form requesting information regarding his phone and other property being held by Nashville Police. Defendant Tallant responded to the request form in writing informing Plaintiff that she had given him a copy of the evidence receipt from Nashville Police. On May 6, 2014, Plaintiff submitted another inmate request form requesting assistance with a 2008 or 2009 warrant for his arrest. Defendant Tallant responded to the request form in writing informing him that she had checked with both the City of Malvern and Hot Springs County and that neither had an outstanding warrant for his arrest. Finally, on June 18, 2014, Plaintiff submitted an inmate request form asking for assistance in connection with an arrest warrant for a hot check violation. In response, Defendant Tallant met with Plaintiff and informed him what fees were owed and how to pay them.

In each of these instances, Defendant Tallant responded, either in writing or verbally, to Plaintiff's grievance or request form. At no time during these exchanges did Plaintiff mention being verbally or physically harassed by other inmates.

Plaintiff identified three additional inmate request forms submitted during his incarceration at the HCDC which were not included in his jail file. On April 6, 2014, an inmate request form was submitted by Plaintiff requesting he be permitted to work on the road crew. Defendant Tallant

5

responded on the form that Plaintiff had been approved for road crew. On June 19, 2014, Plaintiff submitted an inmate request form thanking Defendant Tallant for finding out about his warrant and asking her if he would still be required to appear in court. Defendant Tallant responded in writing stating that Plaintiff would need to go to court. Finally, on June 24, 2014, Plaintiff submitted another inmate request form asking for copies of his plea agreement and other papers he signed on April 2, 2014. He also requested information regarding his sex offender fee. That same day, Defendant Tallant responded in writing that she had faxed his request to the courthouse.

In each of these instances, Defendant Tallant responded to Plaintiff's request form in writing. At no time during these exchanges did Plaintiff mention that he was being verbally or physically harassed by other inmates.

Defendant Cortez was employed by the HCDC during Plaintiff's incarceration and he witnessed inmates calling Plaintiff names. When this occurred Defendant Cortez instructed the inmates to stop. During these incidents, Defendant Cortez observed Plaintiff laughing, smiling and pointing his middle finger up. Defendant Cortez did not report this name calling to Defendant Tallant or any other HCDC employee. Defendant Cortez never witnessed Plaintiff being physically harassed by other inmates and Plaintiff never asked to be moved.

Defendant Cook, a former employee of HCDC, recalls inmates calling Plaintiff names but does not recall what the names were or what dates the incidents occurred. Defendant Cook would instruct the inmates to stop. Defendant Cook believed Plaintiff was joking, laughing and carrying on with the other inmates. Defendant Cook did not report this name calling to Defendant Tallant or any other HCDC employee. Plaintiff never came to Defendant Cook with a complaint or asked if he could be moved.

During her employment at the HCDC, Defendant Miller-Smith once heard another inmate say "hey sugar" or "hey girl" to Plaintiff. She gave the inmate a look of disapproval and the inmate apologized to Plaintiff. Defendant Miller-Smith observed Plaintiff laughing and smiling during the incident. Defendant Miller-Smith did not report this name calling to Defendant Tallant or any other HCDC employee. Plaintiff did not go to Defendant Miller-Smith with complaints of harassment and never requested to be moved.

Defendant Schwope has been employed at the HCDC for sixteen years. She did not witness any physical abuse or any verbal harassment of Plaintiff during his incarceration at the HCDC. She was never advised by Plaintiff, either verbally or in writing, that he was being harassed or threatened in any way.

During his employment at the HCDC, Defendant Sean Scott never witnessed any verbal or physical harassment towards Plaintiff. Plaintiff did not advise him that he was being harassed and never asked Defendant Scott if he could be moved.

Plaintiff never notified Defendant Tallant, either verbally or in writing, that he was being verbally harassed, threatened or assaulted. She had no knowledge of any written grievances submitted by Plaintiff relating to physical sexual assaults. Although Defendants Cortez, Cook and Miller-Smith witnessed Plaintiff being verbally harassed they never informed Defendant Tallant about the harassment.

## CONCLUSIONS OF LAW

1. **Official Capacity**

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendants

acted under color of state law and that they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Howard County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Howard County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Id.* at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

There was no testimony or evidence presented that there was an unconstitutional policy or custom of the HCDC that contributed in any way to Plaintiff's injuries. Accordingly, Plaintiff's claims against Defendants in their official capacities fail.

**2. Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation

omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to clam, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." *Lenz v. Wade*, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

The Eighth Circuit Court of Appeals, however, has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 347 F.3d 736 (8th Cir. 2001)) (explaining that a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Although Plaintiff claims he submitted three grievances relating to the physical assaults, there is no record of any defendant receiving such a grievance. Each Defendant testified that he or she never received or had any knowledge of any grievances filed by Plaintiff relating to a physical sexual assault. Even so, the Court will not dismiss Plaintiff's claims solely on his failure to file a written grievance in light of the fact that three of the defendants witnessed Plaintiff being verbally harassed prior to the physical assaults. In addition, Defendant Tallant testified that, although it would be rare, it is possible that a grievance could be misplaced.

### 3. Failure to Protect

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir.

1998).[4] However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff to show the official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Id.* (*quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted).

Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Whether an injury is sufficiently serious is "claim dependent." *Id.* at 447. The Eighth Circuit has held that rape or sexual assault at the hands of other prisoners is sufficiently serious to amount to a constitutional violation. *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014) ("It is . . . beyond dispute that rape or sexual assault at the hands of other prisoners is sufficiently serious to amount to a deprivation of constitutional dimension.") (internal quotations omitted); s*ee Seltzer-Bey v. Delo,* 66 F.3d 961,

---

[4] Plaintiff was a convicted prisoner at the time of the physical altercations at issue. Therefore, the Eighth Amendment standard will be applied.

11

962-63 (8th Cir. 1995) (a prison guard's sexual comments coupled with daily strip searches and rubbing of the prisoner's buttocks with his night stick implicated the Eighth Amendment); *Watson v. Jones,* 980 F.2d 1165, 1165-66 (8th Cir. 1992) (guards daily pat-down searches, tickling, and deliberately examining genital area implicated the Eighth Amendment).

In this case, Plaintiff was subjected to "dry humping" by another inmate, having his pants pulled down while another inmate pretended to engage in sexual intercourse with him, and being slapped on the buttocks by another inmate. Although he did not receive any physical injury as a result of the sexual assaults, he was subjected to significant fear, ridicule and humiliation at the hands of other inmates. Accordingly, the Court finds Plaintiff's injury sufficiently serious to amount to a constitutional violation under the Eighth Amendment.

Even though the sexual assault suffered by Plaintiff implicates the Eighth Amendment, the Court is not convinced that any of the defendants were deliberately indifferent so as to subject them to liability. It has long been established in the Eighth Circuit and elsewhere that "(a) prison official may be held liable under the Eighth Amendment if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Kahle v. Leonard,* 477 F.3d 544 (8th Cir. 2007) (citing *Coleman v. Rahija,* 114 F.3d 778, 785) (8th Cir. 1997). In this case there is no evidence that any of the defendants had knowledge or reason to know Plaintiff would be physically assaulted by other inmates in the HCDC.

In addition to the formal written grievance procedure at the HCDC, Plaintiff could approach Defendant Tallant and/or other HCDC employees at any time with concerns about his safety. The evidence demonstrates that Plaintiff submitted multiple written requests to Defendant Tallant not only during the month he was assaulted but up until he was transported to the ADC.

He communicated with Defendant Tallant after the sexual assaults on six different occasions and never reported that he had been sexually assaulted.[5]

It is clear that Defendant Tallant had no knowledge Plaintiff was ever verbally harassed, threatened or sexually assaulted during his incarceration at the HCDC. The same is true for Defendants Schwope and Scott. Neither Schwope nor Scott witnessed any physical abuse or verbal harassment of Plaintiff and they were never advised by Plaintiff, either verbally or in writing, that he wanted to be moved to a different location. Accordingly, Plaintiff's claims against Defendants Tallant, Schwope and Scott in their individual capacities fail.

The remaining defendants Cortez, Cook and Miller-Smith each witnessed Plaintiff being verbally harassed and never reported the harassment to Defendant Tallant or anyone else at the HCDC. They each testified that when they observed the name calling incidents Plaintiff appeared to be laughing, joking around, and even bantering back and forth with the other inmates. Defendants Cortez, Cook and Miller-Smith should have reported the verbal harassment to Defendant Tallant. However, their failure to report the verbal harassment was at most negligent. Negligence alone does not constitute deliberate indifference. *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010). Accordingly, Plaintiff's claims against Defendants Cortez, Cook and Miller-Smith in their individual capacities fail.

## CONCLUSION

Based upon the above findings of fact and conclusions of law, the Court finds that Defendants Jana Tallant, Dewanda Schwope, Brian Cook, Hector Cortez, Sean Scott, and Shelbi

---

[5] On April 6, 2014, Plaintiff followed up on a previous request he had submitted to work on the road crew. On April 23, 2014, Plaintiff submitted a request following up on a previous inquiry relating to his phone and other property in the possession of the Nashville Police Department. On May 6, 2014, Plaintiff submitted a request about an outstanding warrant. On June 18, 2014, he requested assistance in connection with another warrant for hot check violations. On June 19, 2014, Plaintiff wrote and thanked Defendant Tallant for providing him with information concerning his warrant. Then, on June 24, 2014, Plaintiff submitted a request asking for a copy of his plea agreement and information on the payment of his sex offender fee.

Miller-Smith are entitled to judgment in their favor and against Plaintiff Lee Baker. A judgment of even date consistent with this opinion shall issue.

    **IT IS SO ORDERED,** this 23rd day of March 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge
